## SUPERIOR COURT

Nathan Mersky
vs. } N. 3176
Michael T. Leary

RESCRIPT.

November 21, 1924.

BAKER, J. Heard of defendant's motion for a new trial, based on the usual grounds.

This is an action for damages for breach of a contract in which the jury returned a verdict for the plaintiff for $2000.

The plaintiff's contention is that he entered into a certain written agreement with the defendant whereby the latter was to sell and deliver to him for the sum of $6000 a certain pile of metals located in the defendant's junk yard in the city of Newport. The plaintiff claims that the defendant broke this contract by selling the metals to another.

The testimony shows that the parties did enter into a written agreement for the sale of the metals in question. The defendant, however,, contends that he was justified in selling to a third person because the plaintiff himself broke the contract.

The testimony in the case was quite conflicting. The defendant claimed that the written agreement, which was very informal, was immediately modified by an oral agreement in regard to the time of delivery and the time when the plaintiff expected to start removing the metals. There was also a sharp conflict in the testimony as to whether or not the plaintiff made a proper tender and as to whether or not he could have completed the removal of the metals within the time specified in the contract.

These issues, which were determinative of the question as to what the agreement was between the parties and as to whether the defendant or the plaintiff committed the first breach, were submitted to the jury on the conflicting evidence. The jury evidently found that there was a contract between the parties as represented by the written agreement and not modified by any subsequent talk by the parties; that the plaintiff could have performed; if given opportunity, and that his tender was good, and that therefore,, the defendant broke the agreement and that the plaintiff was entitled to damages. This question was clearly for the jury to determine, on the evidence, and the Court is satisfied with the finding of the jury and is of the opinion that the verdict in this regard is clearly supported by a fair preponderance of the testimony.

The difficult question in the case is in regard to the measure of damages.

The defendant contends very urgently that the fair market value of the metals in question at the time when the plaintiff sought to get them was less than the contract price of $6000 and, therefore, that the plaintiff is entitled to nominal damages only.

The plaintiff, on the other hand, contends that there is ample testimony in the case to support the verdict returned by the jury and that, in fact, the verdict could have been somewhat higher than it actually was.

The first question to be determined in considering the measure of damages is the amount of metal involved. There was a sharp conflict on this point. The defendant claimed that by actual weight the amount was approximately 504 tons. The plaintiff, on the other hand, who qualified as an expert dealer in metals and junk, testified that by estimation the metals in question in the defendant's yard amounted to 750 tons, and another

expert junk dealer testified that in his opinion they amounted to 800 tons.

There was also a question as to the character of the different kinds of metals making up the total amount.

The jury in computing damages evidently took the plaintiff's estimate on this question, and the Court does not feel on the evidence that it can say that it did not have a right so to do if it saw fit. The court does feel, however, that the utmost amount of tonnage which the plaintiff can properly claim is his own estimate of 750 tons, and that that amount is a fair basis upon which to compute damages.

The testimony of the plaintiff, which evidently the jury accepted, shows that this tonnage was made up of approximately 300 tons of cast iron, 150 tons of steel, 150 tons of pipe, and 150 tons of miscellaneous metals.

Both parties to the litigation are substantially in agreement that the fair market price of these metals is set out in the magazine introduced in evidence called "The Iron Age" for the date in question.

It would appear from the testimony that the active and ordinary market for steel is Pittsburgh, and that the ordinary active market for pipe and miscellaneous metals is in the general neighborhood of Lebanon, Pennsylvania. It would appear from the testimony and from the magazine "The Iron Age" that there is a market for cast iron in Pittsburgh and also a market for cast iron at New York, or at Bridgeport in the neighborhood of New York.

After a careful consideration it appears to the Court that in regard to the matter of the market for cast iron, the plaintiff is entitled to the nearest active market to Newport, which apparently is New York or Bridgeport, and that in computing damages as to cast iron, plaintiff should not be compelled to ship to Pittsburgh.

In computing damages it is of course necessary to deduct the cost of

cartage from the defendant's yard in Newport to the railroad freight yard in Newport and also the freight rate from Newport to the nearest active market for the kind of metal being handled.

The jury having found for the plaintiff, the Court is of the opinion that the plaintiff is entitled to the maximum quotation given for the types of metals under discussion, based on the plaintiff's figures of 750 tons made up as above referred to. This being so, the Court believes the matter can be worked out in perhaps the following way:

In regard to steel, figured at a maximum of $17.50 a ton with a cartage charge to be deducted of $1.50 per ton and freight rate of $6.14 per con, 150 tons, the plaintiff's estimate, would give the total net value of $1479.

In regard to pipe, the maximum quotation is $15 per ton, from which should be deducted $1.50 per ton for cartage, $4.90 for a freight rate to Lebanon, which would yield on the basis of 150 tons approximately $1290 net.

In regard to the matter of miscellaneous metals, there is some question as to the fair market value. There is no figure quoted for the market value of this kind of metal in "The Iron Age." The Court is of the opinion, however, that a fair preponderance of the testimony shows that the fair market value is approximately $10 a ton. This being so, deducting therefrom $1.50 per ton for cartage, and $4.90 per ton for freight to Lebanon, would leave, on the basis of 150 tons, approximately $540 net.

In regard to cast iron No. 1, this perhaps presents the most difficult question. As the Court has said, it believes that the plaintiff is entitled to the quotation of the New York market. See page 1245 of "The Iron Age."

There is some conflict in the testimony as to whether the iron was all No. 1, or a part of it No. 2. Giving the plaintiff the benefit of this however, it would appear that the maximum quotation is $19 a ton. From this should be deducted $1.50 per ton for cartage in Newport. The exact freight rate to New York does not seem to be available, but it is obviously about $4 a ton. Figuring on this basis and allowing 300 tons, would give approximately $4000 net. In other words, on the figures above given, the total market value of the metals would be about $7300. Deducting from this the contract price of $6000 would leave the plaintiff damages of approximately $1300.

After a careful consideration of the whole case, in the judgment of the Court this figure of $1300 more nearly on the evidence represents the plaintiff's damages and will do substantial justice between the parties in this case.

Therefore, if within ten days from the date of the filing hereof the plaintiff remits all of the verdict in excess of $1300, defendant's motion for a new trial is denied, otherwise it is granted.

For Plaintiff: Max Levy.

For Defendant: Jeremiah P. Mahoney.

## SUPERIOR COURT

Helen Stanford p. a.
vs.          No. 55967
Donato Panniello et al

RESCRIPT

November 18, 1924